**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| MOBILE TELECOMMUNICATIONS TECHNOLOGIES, LLC,<br><br>      Plaintiff,<br><br>      v.<br><br>GOOGLE INC.,<br><br>      Defendant. | Civil Action No. 2:16-cv-00002-JRG-RSP<br><br>LEAD CASE |
| MOBILE TELECOMMUNICATIONS TECHNOLOGIES, LLC,<br><br>      Plaintiff,<br><br>      v.<br><br>MICROSOFT CORPORATION,<br><br>      Defendant. | Civil Action No. 2:15-cv-02122-JRG-RSP |

**ORDER REGARDING E-DISCOVERY**

The Court ORDERS as follows:

1. This order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

2. This order may be modified in the court's discretion or by agreement of the parties. Moreover, nothing in this Order precludes a party from seeking to compel production of

      ESI, or from objecting to or seeking a protective order with respect to a request for ESI, pursuant to the procedures set forth in Federal Rule of Civil Procedure 26(b)(2).

3. A party's meaningful compliance with this order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

4. Absent a showing of good cause, general ESI production requests under Federal Rules of Civil Procedure 34 and 45, or compliance with a mandatory disclosure requirement of this Court, shall not include metadata, with the exception of the fields identified in Appendix 1 and the Confidentiality Designation. However, fields showing the date and time that the document a communication was sent and received, as well as the complete distribution list (to the extent it is reasonably available), shall generally be included in the production if such fields exist. The above also applies to hard copy documents. The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents are correct, however, the parties acknowledge that such metadata may not always be accurate and might instead contain irrelevant or incorrect information generated during the collection process.

5. Absent agreement of the parties or further order of this court, the following parameters shall apply to ESI production:

    a. **General Document Image Format.** Each electronic document shall be produced in single-page Tagged Image File Format ("TIFF") format. TIFF files shall be single page and shall be named with a unique production number followed by the appropriate file extension. Load files (*e.g.*, .dat and .lfp or .opt files) shall be provided to indicate the location and unitization of the TIFF files. If a document

        is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

  b. **Text-Searchable Documents.** No party has an obligation to make its production text-searchable; however, if a party's documents already exist in text-searchable format independent of this litigation, or are converted to text-searchable format for use in this litigation, including for use by the producing party's counsel, then such documents shall be produced in the same text-searchable format at no cost to the receiving party, to the extent that the data is indexed in a tool that supports extracted text reports. In such a case when text-searchable documents are produced, the parties shall provide searchable extracted text or OCR files.

  c. **Footer.** Each document image shall contain a footer with a sequentially ascending production number. If the production number inadvertently covers any text or markings, the receiving party may request a replacement image for that document with the footer moved to a different location on the page to correct that error.

  d. **Security.** Both parties will make reasonable efforts to ensure that any productions made are free from viruses and provided on encrypted media.

  e. **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file.

f.   **Native Files.**  To the extent that the term "native" is used in this agreement, it means either in native or otherwise comparable format.  Spreadsheets (*e.g.*, MS Excel, Google Sheets) and delimited text files (*e.g.* comma-separated value (.csv) files and tab-separated value (.tsv) files) shall be produced in their native file format. TIFF images need not be produced unless the files have been redacted, in which instance such files shall be produced in TIFF with OCR Text Files. If good cause exists to request production of files, other than those specifically set forth above, in native format, the party may request such production and provide an explanation of the need for native file review. Upon receipt of such a request, the producing party shall meet and confer in good faith as to whether to produce the document in its native format. Any native files that are produced shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in Appendix 1. A TIFF placeholder (*e.g.*, a TIFF slipsheet named with the same production number followed by the appropriate file extension and marked with the same production number and "PRODUCED IN NATIVE FORMAT") indicating that the document was provided in native format should accompany the database record. If a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.

g.   **No Backup Restoration is Required.**  Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks,

        SAN, and other forms of media, to comply with its discovery obligations in the present case.

- h. **Voicemail and Mobile Devices.** Absent a showing of good cause, voicemails, PDAs and mobile phones are deemed not reasonably accessible and need not be collected and preserved.

- i. **Audio and Video Files.** Absent a showing of good cause, audio and video files are deemed not reasonably accessible and need not be collected and preserved.

- j. **Logs.** Absent a showing of good cause, server, system, or network logs are deemed not reasonably accessible and need not be collected and preserved.

- k. **Culling and Filtering.** Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of system file types based on file extension may include, but are not limited to: WINNT, LOGS, DRVS, C++ Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), Temporary File (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), or Program Installers.

      l.    **Deduplication.** A party is required to produce only a single copy of a responsive document and a party may de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) across Custodians.  For emails with attachments, the hash value is generated based on the parent/child document grouping.  A party may also de-duplicate "near-duplicate" email threads as follows: In an email thread, only the final-in-time document need be produced, assuming that all previous emails in the thread are contained within the final message. Where a prior email contains an attachment, that email and attachment shall not be removed as a "near-duplicate." To the extent that de-duplication through MD5 or SHA-1 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-duplication.

6. General ESI production requests under Federal Rules of Civil Procedure 34 and 45, or compliance with a mandatory disclosure order of this court, shall not include e-mail or other forms of electronic correspondence (collectively "e-mail").  To obtain e-mail parties must propound specific email requests.

7. E-mail production requests shall be phased to occur timely after the parties have exchanged initial disclosures, a specific listing of likely e-mail custodians, a specific identification of the eight most significant listed Google e-mail custodians and fifteen most significant listed Microsoft and MTel e-mail custodians in view of the pleaded claims and defenses, infringement contentions and accompanying documents pursuant to P.R. 3-1 and 3-2, invalidity contentions and accompanying documents pursuant to P.R. 3-3 and 3-4, and preliminary information relevant to damages.  The exchange of this information shall occur at the time required under the Federal Rules of Civil Procedure,

Local Rules, or by order of the court. The court may allow additional discovery upon showing of good cause.

8. E-mail production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms, and proper time frame. MTel shall limit its e-mail production requests to a total of six custodians for Google and eight custodians for Microsoft for all such requests. Defendants shall collectively limit their email production requests to MTel to a total of five common custodians and three custodians identified by each of Google and Microsoft.[1] The parties may jointly agree to modify this limit without the court's leave. The court shall consider contested requests for additional or fewer custodians per producing party, upon showing a distinct need based on the size, complexity, and issues of this specific case. Email production requests shall be served no later than 90 days before the deadline to substantially complete document production in the Docket Control Order.

9. Each requesting party shall limit its e-mail production requests to a total of eight search terms per custodian per party. The parties may jointly agree to modify this limit without the court's leave. The court shall consider contested requests for additional or fewer custodians per producing party, upon showing a distinct need based on the size, complexity, and issues of this specific case. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple

---

[1] For the purpose of this paragraph, Google and Microsoft constitute "Defendants."

words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term.  A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word.  Use of narrowing search criteria (*e.g.*, "and," "but not, " "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.

10. To the extent relevant to the Litigation, source code will be made available for inspection pursuant to the terms of the Protective Order.  The parties agree that the search terms will not be applied to source code.

11. Pursuant to Federal Rule of Evidence 502(d), the production of privileged or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding.  For example, the mere production of privilege or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or any other federal or state proceeding.  A producing party may assert privilege or protection over produced documents at any time by notifying the receiving party in writing of the assertion of privilege or protection.  In addition, information that contains privileged matter or attorney work product shall be immediately returned if such information appears on its face to have been inadvertently produced pursuant to Fed. R. Evid. 502(b).

12. Nothing in this Agreement shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.  The parties do not waive

any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI. Disclosures among defendants' attorneys of work product or other communications relating to issues of common interest shall not affect or be deemed a waiver of any applicable privilege or protection from disclosure.

13. The mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.

14. Except as expressly stated, nothing in this order affects the parties' discovery obligations under the Federal or Local Rules.

**SIGNED this 12th day of July, 2016.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

# Appendix 1

**A. Production Components.** Productions shall include, in addition to single page TIFFs and Text Files, (a) an ASCII delimited metadata file (.txt, .dat, or .csv), and (b) an image load file that can be loaded into commercially acceptable production software (*e.g.*, Concordance).

**B. Image Load File** shall contain the following comma-delimited fields:   BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT

**C. Metadata Load File** shall be delimited according to the following characters:
   Delimiter = D (ASCII:0020)          Text-Qualifier = þ (ASCII:00254)

**D.** At least the following **Metadata Fields** shall appear in the metadata load file:

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | Includes the Individual (Custodian) from whom the documents originated and all Individual(s) whose documents de-duplicated out (De-Duped Custodian). |
| SUBJECT | Subject line of email |
| TITLE | Title from properties of document |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| TO | All recipients that were included on the "To" line of the email |
| FROM | The name and email address of the sender of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| AUTHOR | Any value populated in the Author field of the document properties |
| FILENAME | Filename of an electronic document (Edoc only) |
| DATEMOD | Date an electronic document was last modified (format: MM/DD/YYYY) (Edoc only) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) (Edoc only) |
| NATIVELINK | Native File Link (Native Files only) |